# Walden Macht & Haran LLP



One Battery Park Plaza, 34th Floor
New York, NY 10004
212 335 2030

November 27, 2018

**Via CM-ECF**

Honorable Valerie E. Caproni
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re: *United States v. Alain Kaloyeros, et al.,* No. S2 16 Cr. 776 (VEC) (S.D.N.Y.)

Dear Judge Caproni:

      We represent Joseph Gerardi in the above-referenced matter. We write briefly to address two issues raised in the Government's sentencing submission for Mr. Gerardi. ECF No. 912 ("Govn't Submission"). The first is the Government's argument that a sentencing enhancement is warranted under U.S.S.G. § 2B1.1 because Mr. Gerardi supposedly intended pecuniary harm to Fort Schuyler Management Corporation. The second is the Government's request that Your Honor enhance Mr. Gerardi's sentence based on crimes of which he was acquitted at the January Trial. The Government is wrong on both issues.

**1.    The Government Did Not Prove Intended Loss**

      The Government asserts that by intending to tailor the Syracuse RFP to give COR an advantage, Mr. Gerardi intended to cause pecuniary harm to Fort Schuyler. Govn't Submission at 6. However, those are two entirely separate intents. One does not necessarily entail the other,[1] and there is no evidence that Mr. Gerardi's intent to advantage COR was coupled with an intent to harm Fort Schuyler. The Government offered no proof that another developer would have performed on the Syracuse projects better than COR, or equally well for a lower price, much less that Mr. Gerardi was aware of such a developer and intent on preventing it from competing. Further, the Government did not identify any developers who were prevented from winning the RFP or would have been prevented from winning based on Mr. Gerardi's proposed edits.

---

[1] The Government cites no authority for the proposition that an intent to rig a bid entails an intent to cause financial harm, nor does it identify a single case where this reasoning was adopted. If, as the Government contends, bid-rigging necessarily entailed intended loss, that principle would presumably be articulated in countless sentencing decisions, and would likely be mentioned in the Sentencing Guidelines.

1

Moreover, Mr. Gerardi could not have known what other developers, or even COR itself, would have charged for the Syracuse projects: the projects had not even been identified when the Syracuse RFP was issued,[2] and price was determined during a later negotiation stage (at which Fort Schuyler was free at all times to demand any price it wanted, as well as walk away and negotiate with whomever else is pleased).[3]

At most, Mr. Gerardi intended to influence the RFP so that qualifications that COR happened to possess were sought. However, as the Government's witnesses consistently testified, those qualifications were valuable to Fort Schuyler, and any competent developer (which COR indisputably was) should have possessed them. Thus, in sum, the Government did not prove that Mr. Gerardi intended to cause financial harm to Fort Schuyler. Quite the opposite. The evidence demonstrated that Mr. Gerardi helped ensure that Fort Schuyler would select a "Preferred Developer" with relevant and appropriate qualifications.

**2.   Mr. Gerardi's Sentence Should Not be Enhanced Based on Conduct of which He was Acquitted**

The Government requests that Mr. Gerardi's sentence take into account the crimes of which he was acquitted at the January Trial. Gov't Submission at 2 n.1. Respectfully, the Court should decline this request because the Government did not prove those crimes by a preponderance of the evidence.

Even if the Government had proved the crimes by a preponderance of the evidence, the Court should not enhance Mr. Gerardi's sentence based on those crimes because he was acquitted. Admittedly, the Second Circuit has held that sentencing courts may consider acquitted conduct. *See United States v. Vaughn*, 430 F.3d 518, 527 (2d Cir. 2005). It appears the Ninth Circuit is the only circuit to have forbidden such consideration. *See United States v. Brady*, 928 F.2d 844, 850-52 (9th Cir. 1991) (court may not "reconsider facts during sentencing that have been rejected by a jury's not guilty verdict"). However, the practice of enhancing a sentence based on acquitted conduct has not been authorized by the Supreme Court[4] and has been rightly condemned by a large

---

[2] Because the projects were unknown at the time the RFP was issued, Mr. Gerardi could not reasonably foresee the amount of money COR would earn as a "Preferred Developer." Thus, even assuming there was a loss, it would be improper to use COR's gain as the relevant measure. *See* U.S.S.G. § 2B1.1 cmt. n. 3(A) (defining "actual loss" as "the *reasonably foreseeable* pecuniary harm that resulted from the offense," and "intended loss" as "the pecuniary harm that the defendant *purposely sought to inflict*" (emphasis added)).

[3] The Government asserts that "a notable feature of the bid-rigging scheme here was to prevent evaluation based on price." Gov't Submission at 6. Putting aside the fact that the Government's only evidence of this relates to LPCiminelli, evaluation based on qualifications (rather than price) was not a feature of the alleged scheme. It was an inherent consequence of an RFP in which projects were not yet identified and thus could not be priced. Moreover, RFQs, which are common procurement tools, make particular sense where, as here, the issuing entity is seeking a long-term partner rather than a contractor for a discrete project.

[4] As explained in *United States v. Booker*, the Supreme Court held in *United States v. Watts*, 519 U.S. 148 (1997) (per curiam), "that the double jeopardy clause permitted a court to consider acquitted conduct in sentencing a defendant under the Guidelines." *Booker*, 543 U.S. 220, 240

segment of the judiciary (including judges on the Second Circuit[5]) as unconstitutional and at odds with our common law heritage, the Sentencing Reform Act of 1984, and common sense.[6]

---

(2005). However, the Court in *Booker* "held that *Watts* is irrelevant to the issue of the use of acquitted conduct generally or under the Sixth Amendment because in *Watts* there was no 'contention that the sentence enhancement had exceeded the sentence authorized by the jury verdict in violation of the Sixth Amendment. The issue ... simply was not presented.'" *United States v. White*, 551 F.3d 381, 392 (6th Cir. 2008) (en banc) (Merritt, Martin, Daughtrey, Moore, Cole & Clay, JJ., dissenting) (quoting *Booker*, 543 U.S. at 240). The doctrinal landscape is far from settled, and there is growing demand for the Supreme Court to address this issue. *See, e.g., Jones v. United States*, 135 S. Ct. 8 (2014) (Scalia, J., joined by Thomas & Ginsburg, JJ., dissenting from the denial of cert.) ("[T]he Courts of Appeals have uniformly taken our continuing silence to suggest that the Constitution does permit otherwise unreasonable sentences supported by judicial factfinding, so long as they are within the statutory range. This has gone on long enough." (citations omitted)); *United States v. Bell*, 808 F.3d 926, 929 (D.C. Cir. 2015) (Millett, J., concurring in denial of the r'hrg en banc) ("For multiple reasons, the time is ripe for the Supreme Court to resolve the contradictions in Sixth Amendment and sentencing precedent, and to do so in a manner that ensures that a jury's judgment of acquittal will safeguard liberty as certainly as a jury's judgment of conviction permits its deprivation."); *see also* Congressional Research Service, *Judicial Fact-Finding and Criminal Sentencing: Current Practice and Potential Change*, August 24, 2018, https://fas.org/sgp/crs/misc/LSB10191.pdf (noting the gap in Supreme Court jurisprudence, the apparent hostility of at least four current Justices to the use of acquitted conduct at sentencing, and pending legislation prohibiting such use).

[5] *See United States v. Frias*, 39 F.3d 391, 392-94 (2d Cir. 1994) (Oakes, J., concurring) ("This is jurisprudence reminiscent of Alice in Wonderland. As the Queen of Hearts might say, 'Acquittal first, sentence afterwards.'"); *United States v. Concepcion*, 983 F.2d 369, 395-96 (2d Cir. 1992) (Newman, J., dissenting from denial of request for rehearing en banc) ("In some way, the law must be modified. A just system of criminal sentencing cannot fail to distinguish between an allegation of conduct resulting in a conviction and an allegation of conduct resulting in an acquittal.").

[6] *See, e.g., United States v. Lasley*, 832 F.3d 910, 922 (8th Cir. 2016) (Bright, J., dissenting) ("[T]he time has come to protect a defendant's rights under the Sixth Amendment and Due Process Clause of the Fifth Amendment, and overrule existing precedent permitting the use of acquitted conduct to enhance a defendant's sentence."); *United States v. Bell*, 808 F.3d 926, 928 (D.C. Cir. 2015) (Kavanaugh, J., concurring in denial of the r'hrg en banc) ("Allowing judges to rely on acquitted … conduct to impose higher sentences than they otherwise would impose seems a dubious infringement of the rights to due process and to a jury trial."); *Id.* at 929 (Millett, J., concurring in denial of the r'hrg en banc) (concluding that the Constitution prohibits the material increase of a defendant's sentence based on acquitted conduct); *United States v. Sabillon-Umana*, 772 F.3d 1328, 1331 (10th Cir. 2014) (Gorsuch, J., writing that it is "questionable" whether the Constitution allows a court to increase a defendant's sentence "based on facts the judge finds without the aid of a jury or the defendant's consent"); *United States v. White*, 551 F.3d 381, 391-97 (6th Cir. 2008) (en banc) (Merritt, Martin, Daughtrey, Moore, Cole & Clay, JJ., dissenting) (concluding that "the use of acquitted conduct to punish is wrong as a matter of statutory and constitutional interpretation and violates both our common law heritage and common sense"); *United States v. Canania*, 532 F.3d 764, 776-77 (8th Cir. 2008) (Bright, J., concurring) ("[T]he Constitution forbids judges—Guidelines or no Guidelines—from using 'acquitted conduct' to enhance a defendant's sentence

Enhancing sentences based on acquitted conduct violates the Sixth Amendment.  The Sixth Amendment right to a jury trial is endangered whenever a judge imposes a sentence that is not based solely on "facts reflected in the jury verdict or admitted by the defendant."  *Blakely v. Washington*, 542 U.S. 296, 301 (2004).  Emphasizing that its decisions in *Jones*, *Apprendi*, and *Booker* were not "motivated by Sixth Amendment formalism, but by the need to preserve Sixth Amendment substance," *United States v. Booker*, 543 U.S. 220, 237 (2005), the Supreme Court has consistently returned to the bedrock principle that criminal sentences must be "authorized" by "the jury verdict alone."  *See Booker*, 543 U.S. at 235; *Blakely*, 542 U.S. at 305; *Ring v. Arizona*, 536 U.S. 584, 604 (2002).  There are at least two reasons why "Sixth Amendment substance" is eroded when the notion of a sentence "authorized by the jury verdict" is limited to punishments which merely stay within the statutory maximum for the crime of conviction.  First, the reasonable doubt standard is warranted when imputations of criminal conduct are at stake not only "because

---

because it violates his or her due process right to notice and usurps the jury's Sixth Amendment fact-finding role."); *United States v. Mercado*, 474 F.3d 654, 658 (9th Cir. 2007) (Fletcher, J., dissenting) ("Reliance on acquitted conduct in sentencing diminishes the jury's role and dramatically undermines the protections enshrined in the Sixth Amendment.  Both *Booker* and the clear import of the Sixth Amendment prohibit such a result."); *United States v. Faust*, 456 F.3d 1342, 1349 (11th Cir. 2006) (Barkett, J., specially concurring) ("[S]entence enhancements based on acquitted conduct are unconstitutional under the Sixth Amendment, as well as the Due Process Clause of the Fifth Amendment."); *United States v. Casper*, 536 F.3d 409, 418 (5th Cir. 2008) (Dennis, J., concurring) ("I am greatly troubled that a district court can use conduct acquitted by a jury for a sentence enhancement that significantly increases a sentence beyond that the defendant would have obtained had he been convicted by the jury for that same conduct"); *United States v. Hunter*, 19 F.3d 895, 897-98 (4th Cir. 1994) (Hall, J., concurring) ("[A]s regards charges on which the jury has acquitted the defendant, ['pricing' these charges at the same level of severity as convicted conduct for sentencing purposes] is just wrong."); *United States v. Baylor*, 97 F.3d 542, 551 (D.C. Cir. 1996) (Wald, J., specially concurring) (holding that use of acquitted conduct at sentencing "violates time honored constitutional principles designed to protect criminal defendants"); *United States v. Pimental*, 367 F.Supp.2d 143, 153 (D. Mass. 2005) (Gertner, J.) ("To tout the importance of the jury in deciding facts, even traditional sentencing facts, and then to ignore the fruits of its efforts makes no sense—as a matter of law or logic."); *United States v. Carvajal*, No. 04 CR 222AKH, 2005 WL 476125, at *5 (S.D.N.Y. Feb. 22, 2005) (Hellerstein, J.) (sentencing defendant to term less than Guidelines range in order to "accord the jury's [not guilty] findings proper respect"); *United States v. Coleman*, 370 F.Supp.2d 661, 671 (S.D. Ohio 2005) (Marbley, J.) ("[T]he jury's central role in the criminal justice system is better served by respecting the jury's findings with regard to authorized *and* unauthorized conduct." (emphasis in original)); *United States v. Baldwin*, 389 F. Supp. 2d 1, 2 (D.D.C. 2005) (Friedman, J.) (holding that for "acquitted conduct (if it may be considered at all), [] the standard would have to be proof beyond a reasonable doubt"), *aff'd*, 563 F.3d 490 (D.C. Cir. 2009); *United States v. Jones*, 863 F.Supp. 575, 578 (N.D. Ohio 1994) (Aldrich, J.) ("The right to a trial by jury means little if a sentencing judge can effectively veto the jury's acquittal on one charge and sentence the defendant as though he had been convicted of that charge."); *Cf. Jones v. United States*, 135 S. Ct. 8 (2014) (Scalia, J., joined by Thomas & Ginsburg, JJ., dissenting from the denial of cert.) ("[A]ny fact necessary to prevent a sentence from being substantively unreasonable—thereby exposing the defendant to the longer sentence—is an element that must be either admitted by the defendant or found by the jury. It may not be found by a judge.").

4

of the possibility that [an individual] may lose his liberty upon conviction," but also "because of the certainty that he would be stigmatized[.]" *In re Winship*, 397 U.S. 358, 363 (1970); *see also McMillan v. Pennsylvania*, 477 U.S. 79, 96 (1986) ("Once a State defines a criminal offense, the Due Process Clause requires it to prove any component of the prohibited transaction that gives rise to both a special stigma and a special punishment beyond a reasonable doubt."). Even if Mr. Gerardi's maximum possible sentence is not increased by a sentence enhanced by consideration of acquitted conduct, such an enhancement changes the quantity and quality of the stigma he faces. Second, "to consider acquitted conduct trivializes 'legal guilt' or 'legal innocence'—which is what a jury decides—in a way that is inconsistent with the tenor of the recent case law," *United States v. Pimental*, 367 F.Supp.2d 143, 152 (D. Mass. 2005), by "reducing the jury's role to the relative importance of a low-level gatekeeper." *Booker*, 543 U.S. at 230 (quotations omitted). In sentencing on the basis of acquitted conduct, a court "is expressly considering facts that the jury verdict not only failed to authorize; it considers facts of which the jury *expressly disapproved*." *Pimental*, 367 F.Supp.2d at 152 (emphasis added). That is an improper "incursion into the jury's constitutional role." *United States v. Bell*, 808 F.3d 926, 930 (D.C. Cir. 2015) (Millett, J., concurring in denial of the r'hrg en banc).

Sentencing based on acquitted conduct also violates the Due Process Clause of the Fifth Amendment. As Judge Barkett of the Eleventh Circuit explained:

> [A]s a matter of simple justice, factual findings by a sentencing judge ought to reflect the moral blameworthiness of an *already culpable* defendant. Rather than punishing an offender for his guilt or innocence *per se*, judicially imposed enhancements historically relate to contextual matters like the vulnerability of the victim, the status of the victim, the defendant's role in the offense, or even the quantity of drugs in the defendant's possession. If these 'contextual' questions can or should be resolved by a sentencing judge under a preponderance standard, that is because our criminal justice system deviates from its preference for the highest standard of proof only when it comes to facts that do not—and could not—go to the basic question of legal culpability, traditionally a jury's responsibility. When a sentencing judge finds facts that could, in themselves, constitute entirely free-standing offenses under the applicable law—that is, when an enhancement factor could have been named in the indictment as a complete criminal charge—the Due Process Clause of the Fifth Amendment requires that those facts be proved beyond a reasonable doubt.

*United States v. Faust*, 456 F.3d 1342, 1351-52 (11th Cir. 2006) (Barkett, J., specially concurring) (emphasis in original; quotations and citations omitted).[7] The conduct at issue in the January Trial clearly does not relate to "traditional" sentencing factors. It constitutes wholly separate criminal charges, of which Mr. Gerardi was acquitted.

---

[7] Sentencing on the basis of acquitted conduct not only violates the Due Process Clause's specific guarantee of proof beyond a reasonable doubt, but also other aspects of "the requirement of fundamental fairness" embodied in the constitutional right to due process of law. *Winship*, 397 U.S. at 369 (Harlan, J., concurring).

5

"[T]he Constitution generally affords the prosecution one shot at convicting a defendant of charged conduct." *Bell*, 808 F.3d at 932 (Millett, J., concurring in denial of the r'hrg en banc). "But counting acquitted conduct at sentencing"—particularly at the sentencing for a *different* trial from the one at which the defendant was acquitted—"gives the government a second bite at the apple." *Id.* Moreover, "factoring acquitted conduct into sentencing decisions imposes almost insurmountable pressure on defendants to forgo their constitutional right to a trial by jury. Defendants will face all the risks of conviction, with no practical upside to acquittal unless they run the board and are absolved of all charges." *Id.*

In addition to being unconstitutional, the use of acquitted conduct also violates our common law heritage, *see United States v. White*, 551 F.3d 381, 391-95 (6th Cir. 2008) (en banc) (Merritt, Martin, Daughtrey, Moore, Cole & Clay, JJ., dissenting) (examining the historical foundations of sentencing and concluding that use of acquitted conduct violates our common law heritage and eviscerates the jury's longstanding power of mitigation), and is inconsistent with the Sentencing Reform Act of 1984. *See id.* at 395-96 (explaining that the Act "should be read to foreclose the use of acquitted conduct at sentencing").

In conclusion, "the jury explicitly did not authorize sentencing pursuant to" the crimes at issue in the January Trial, "and this Court [should] neither marginalize that finding nor allow the government another opportunity to make a failed case." *United States v. Coleman*, 370 F. Supp. 2d 661, 673 (S.D. Ohio 2005).[8] Accordingly, we respectfully request that the Court not enhance Mr. Gerardi's sentence based on the crimes of which he was acquitted in an entirely separate trial and which the Government failed to prove by a preponderance of the evidence.

Thank you for your attention to this matter.

Very truly yours,

WALDEN MACHT AND HARAN

By:    */s/ Milton L. Williams*

Milton L. Williams
Avni P. Patel
Jacob Gardener

Enclosures

cc:    all parties, via ECF

---

[8] Even if this Court concludes that it is constitutionally permissible to consider acquitted conduct, it nonetheless may (and, we respectfully submit, should) exercise its discretion and decline to do so. *See Bell*, 808 F.3d at 928 (Kavanaugh, J., concurring in denial of the r'hrg en banc) (noting that "federal district judges have power in individual cases to disclaim reliance on acquitted or uncharged conduct").