IC69GERS

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4            v.                          16 CR 00776 (VEC)

5  JOSEPH GERARDI,

6            Defendant.

7  ------------------------------x

8                                        New York, N.Y.
                                         December 6, 2018
9                                        2:02 p.m.

10
   Before:
11
                        HON. VALERIE E. CAPRONI.
12
                                         District Judge
13

14                         APPEARANCES

15 GEOFFREY S. BERMAN
        United States Attorney for the
16      Southern District of New York
   MATTHEW D. PODOLSKY
17 ROBERT BOONE
   DAVID ZHOU
18 JANIS ECHENBERG
        Assistant United States Attorneys
19
   WALDEN MACHT & HARAN
20      Attorneys for Defendant
   MILTON L. WILLIAMS, JR.
21 AVNI PRAFUL PATEL
   JACOB SAMUEL GARDENER
22

23

24

25

                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

IC69GERS

```
 1                (Case called)
 2                MR. ZHOU:  Good afternoon, your Honor.
 3                David Zhou, Matthew Podolsky, Robert Boone and Janis
 4   Echenberg for the government.
 5                With us at counsel table are Special Agent Deleassa
 6   Penland and Paralegal Specialist Jonathan Concepcion.
 7                MR. WILLIAMS:  Good afternoon, your Honor.
 8                Milton Williams here on behalf of Walden Macht & Haran
 9   on behalf Mr. Gerardi with my colleagues Avni Patel, Jacob
10   Gardener and Arielle Gerber.
11                THE COURT:  Good afternoon.  Please be seated
12   everyone.
13                OK.  At the close of the government's case the
14   defendant moved for a judgment of acquittal.  The court
15   reserved decision.  The defendant renewed his motion after the
16   jury's verdict, as did his codefendants, but no party submitted
17   briefing in support of their motions.
18                The defendant's motion is denied.  I find that there
19   was sufficient evidence to support his conviction on each
20   count.
21                Mr. Williams, have you and your client read the
22   presentence report dated November 14, 2018?
23                MR. WILLIAMS:  Yes, we have, your Honor.
24                THE COURT:  Have you discussed it with each other?
25                MR. WILLIAMS:  Yes, we have.
```

IC69GERS

1            THE COURT:  Mr. Gerardi, did you read the presentence

2    report?

3            THE DEFENDANT:  Yes, I did, your Honor.

4            THE COURT:  Did you discuss it with your lawyer?

5            THE DEFENDANT:  Yes, I did, your Honor.

6            THE COURT:  OK.  Please be seated.

7            Mr. Williams, are there any objections to the report?

8            MR. WILLIAMS:  Yes.  The objection is as to the loss

9    calculation.

10            THE COURT:  We'll talk about that.

11            MR. WILLIAMS:  OK.

12            THE COURT:  The presentence report will be made a part

13    of the record in this matter and placed under seal.  If an

14    appeal is taken, counsel on appeal may have access to the

15    sealed report without further application to this court.

16            I received a sentencing submission from the defense

17    dated November 19, 2018 that included many letters from members

18    of Mr. Gerardi's immediate and extended family, current and

19    former employees of his company, business colleagues, friends,

20    neighbors, and his priest.

21            For those of you who wrote me letters, thank you.  I

22    read all of the letters.

23            Also from the defense I received a response to the

24    government's sentencing submission dated November 27, 2018, a

25    letter addressing forfeiture dated December 2, 2018, and a

IC69GERS

1    letter addressing bail pending appeal dated December 4.

2              I received letters from the government dated

3    November 19 and November 29, the latter pertaining to the

4    government's application for forfeiture.

5              I received a number of letters directly from the

6    public.

7              All have been posted to ECF.

8              I gave the parties notice of a possible upward

9    variance in an order dated November 27, 2018.

10             So the next step is a guidelines calculation but

11   before turning to that I need to determine what conduct of

12   Mr. Gerardi's I should take into account, specifically the

13   question is about acquitted conduct, whether I should consider

14   that either in my guidelines calculation or in my ultimate

15   sentence.

16             Mr. Zhou, would you like to be heard on that?

17             MR. ZHOU:  Yes, your Honor.

18             So as the government set forth in its sentencing

19   submission, your Honor, the case law is clear that acquitted

20   conduct can be considered by the court at sentence.  The

21   acquittals in the January trial indicate that the government

22   did not prove beyond a reasonable doubt that Mr. Gerardi

23   committed the crimes that were alleged as part of the Percoco

24   scheme.  But we do submit that we have proved those by a

25   preponderance of the evidence, your Honor.

IC69GERS

1          And I should note that in Mr. Gerardi's letter dated

2     November 27, 2018 he acknowledges that the case law is clear

3     that the court can consider that conduct.

4          Now, your Honor, the government is not asking for the

5     court to either enhance the guidelines or seek an upward

6     departure under the guidelines as a result of that conduct.

7     But we submit that it is a factor that the court should

8     consider in assessing the characteristics of the defendant, his

9     history, as well as considering other factors under Section

10    3553(a) including the need for a specific deterrence, your

11    Honor.

12          THE COURT:  Thank you.

13          Mr. Williams, would you like to be heard?

14          MR. WILLIAMS:  Yes, your Honor.  May I step over here?

15          THE COURT:  Wherever you're most comfortable.

16          MR. WILLIAMS:  So, your Honor, with regard to the

17    acquitted conduct and the government's burden to prove it by a

18    preponderance of the evidence, I'd like to deal with this in

19    two phases.  One is to talk about the specific conduct in the

20    January trial.  And the second then is to briefly go over what

21    we outline in our letter in terms of the constitutional

22    implications of using the acquitted conduct.

23          Now with regard to the January trial, your Honor

24    remembers.  Mr. Gerardi was accused of paying Mr. Percoco,

25    bribing him, $35,000 to do three specific things.  And the

IC69GERS

government's now alleging that the government proved that by a

preponderance of the evidence during that trial.

The first thing was to get COR from out underneath the

application of the labor peace agreement which would be very

costly to them in the building of the construction projects in

the Inner Harbor.  And if your Honor remembers from the first

trial, and I think this went a long way to Mr. Gerardi getting

acquitted, and I also think it tends to undermine the existence

of a scheme, which kind of undermines the government's

assertion that they proved it by a preponderance of the

evidence.

With regard to that specific prong, Maria Cassidy of

Empire State Development Corporation was called as a witness to

the stand.  She had no ties to anyone in this case.  In fact, I

gather that she would have loved not to have to testify in this

courtroom.  She was a very credible witness.  And she clearly

stated that she alone made this decision to -- after initially

determining that a LPA might be needed, decided that the labor

peace agreement was not needed on her own with no influence

from Mr. Percoco nor anybody else.

Moving on to the second prong, the second prong to

refresh your recollection.

THE COURT:  Is the budget.

MR. WILLIAMS:  Is the relief of funds that were owed

to COR in the two construction projects involved in the Buffalo

IC69GERS

1   Billions case.  And Mary Beth Labate, again, a very credible

2   witness, someone who had no ties to anyone and I'm sure would

3   have preferred not to have to testify, came here and said she

4   made the decision to release the funds with no influence from

5   Mr. Percoco or anyone else.  Again, I just reiterate the point

6   that tends to undermine the existence of a scheme and the

7   government's assertion that they proved it by a preponderance

8   of the evidence.

9           Lastly, was the raise issue regarding Steven Aiello,

10  Jr.  And I summed up on it, I think I may have opened up on it,

11  and no one refuted me from the government's side that

12  Mr. Gerardi had absolutely nothing to do with that at all.  His

13  name didn't come up.  It wasn't on e-mails.  Nothing.  They

14  didn't argue it on summation.

15          So I would just, with regard to that prong, again, the

16  government has failed to prove that particular prong by a

17  preponderance of the evidence.  And I just wanted to point

18  those, specifically with regard to the evidence in the last

19  trial, that out to you.

20          Then -- and I know your Honor read our letter, so --

21  then you have the constitutional implications.  And although

22  under Second Circuit case law you absolutely can consider

23  relevant conduct, acquitted conduct.  I understand that.  There

24  are a couple of things I'd like to point out.

25          Here in this particular case -- if you look at -- I'm

sorry, the Watts case, the Supreme Court case dealing with this

issue.  The Booker case that came after Watts, the Watts case,

was also decided by the Supreme Court, specifically stated that

they really only dealt with the Fifth Amendment double jeopardy

clause whether or not using acquitted conduct, using acquitted

conduct violates the double jeopardy clause of the Fifth

Amendment.  They didn't deal with the right to the jury trial

under the Sixth Amendment which we outline in our letter, nor

did they deal with the Fifth Amendment due process which I

think -- and let me just talk about that for a second, because

there you have the notion in the case that had been decided by

other circuits subsequent to Booker and also district courts,

where relevant conduct, relevant conduct is for factors or

facts dealing with the defendant's role in the crime, the

vulnerability of the victim, what I think is framed as

contextual matters, as opposed to facts that in and of

themselves would constitute a crime.  I think the facts that

constitute a crime, when you have those -- the facts that

constituted a crime could have been chargeable.  And in that

case, under the Fifth Amendment due process clause, they must

be decided by a jury.  The burden of proof is beyond a

reasonable doubt.  Then you had the other consideration we put

in the letter concerning the stigma attached -- the stigma

attached to a conviction and the fact that that's why under the

Fifth Amendment the burden of proof is beyond a reasonable

IC69GERS

1   doubt.

2          And then the last point, because it's all in the

3   letter and I don't want to belabor the point, but the last

4   point is this:  If acquitted conduct were used in this

5   manner -- I understand that under the Second Circuit case law

6   right now you can do it -- but if acquitted conduct were used

7   in this manner, what is the incentive for anyone to go to trial

8   knowing that another case, if they're acquitted, can be used in

9   the current case.  And here, most of the cases that discuss the

10  acquitted conduct are talking about cases where the acquitted

11  conduct was within the same case; so some counts the defendant

12  was acquitted on, others the defendant was convicted on.

13          Here you have two separate trials.

14          THE COURT:  But it's all one case.

15          MR. WILLIAMS:  I understand that, your Honor.  But

16  it's still --

17          THE COURT:  I mean we could have tried them all

18  together.  If I had fewer defendants I probably would have.

19          MR. WILLIAMS:  I do understand that point.

20          THE COURT:  OK.

21          MR. WILLIAMS:  They are two separate cases.  Anyway

22  I'll rest on the submission.  Thank you very much.

23          THE COURT:  All right.  Thank you.

24          The government does not ask me to take Mr. Gerardi's

25  acquitted conduct into account in my guidelines calculation but

IC69GERS

1    asks me to consider his participation in the Percoco bribery

2    scheme in weighing the required sentencing factors.

3    Mr. Gerardi objects to this approach but he concedes, as he

4    must, that I have the discretion to do it.

5            I believe the government's approach is appropriate.  I

6    will not consider the Percoco bribery scheme when calculating

7    the guidelines.  But at the same time I cannot close my eyes to

8    the persuasive evidence presented during the January trial.

9    Whether or not that evidence amounts to a federal crime as to

10   Mr. Gerardi is important evidence to consider when weighing the

11   required sentencing factors.

12           Accordingly, I accept the facts asserted in the

13   government's November 19 letter as true based on the evidence

14   cited, the credible testimony of Todd Howe, and Government

15   Exhibits 1219, 1706 and 1707.  And in particular I find that

16   COR Development made bribe payments to Mr. Percoco, that

17   Mr. Gerardi was involved in making those payments, and that in

18   exchange Mr. Gerardi called on numerous favors from

19   Mr. Percoco, including assistance to lean on a state agency to

20   abandon the labor peace agreement requirement.

21           So the next step is the actual guidelines calculation.

22   For all of you who are here to support Mr. Gerardi, please bear

23   with me.  I realize that this is somewhat gobbledygook.

24           The defendant was convicted on three counts:  One

25   count of wire fraud conspiracy, one count of wire fraud, and

IC69GERS

1   one count of making a false statement.

2         The presentence report reflects a guidelines level of

3   27, criminal history category I, which yields a guideline range

4   of 70 to 87 months.

5         I find the correct guidelines calculation is as

6   follows.  Pursuant to 3D1.2(b), Counts One and Two are grouped

7   for guideline purposes because one count of conviction is a

8   conspiracy, the object of which is the substantive count of

9   conviction.  The false statement count is grouped with Counts

10  One and Two because it embodies conduct that is an obstruction

11  adjustment to the guidelines applicable to Counts One and Two.

12        So I start with the relevant guideline which is 2B1.1.

13  Because the statutory maximum for the offense of conviction is

14  20 years, 2B1.1(a)(1) sets the base offense level at 7.

15        The next step is the amount of loss under 2B1.1(b).

16  At the urging of the government, probation used the

17  construction fee that was paid to COR Development for the

18  projects they were awarded as a result of the rigged RFP

19  process as the amount of loss.

20        As you all know, I ruled on this issue in connection

21  with the Cimielli sentencing, but would the parties like to

22  take another whack at it?

23        Mr. Zhou.

24        MR. ZHOU:  No, your Honor.

25        I think the government agrees with your Honor that

IC69GERS

```
1    it's clear there was an intended loss in this case and, as we

2    submit in our papers, we believe gain then can stand in for

3    that intended loss, but we accept the Court's ruling as the

4    Court set forth in the Cimielli sentence.

5              THE COURT:  Then I'm not going to go through all of

6    the reasons why I don't think I can come up with a loss

7    calculation.  I find that no loss enhancement is appropriate

8    and, therefore, that's a plus zero.

9              Pursuant to 3C1.1, the defendant willfully obstructed

10   justice by lying to the FBI about his efforts to tailor the RFP

11   to benefit COR as reflected by the verdict convicting him of a

12   violation of 18 U.S.C. 1001.  So that's plus two.

13             That brings the total adjusted offense level to 9.

14             Mr. Gerardi has no prior criminal record so he has no

15   criminal history points.  So he's in criminal history category

16   I.  Level 9, criminal history category I yields a guideline

17   range of 4 to 10 months.

18             Pursuant to 5E1.2(h) the guideline for the applicable

19   fine as found in the 2014 guidelines manual, level 9 in that

20   manual yields a fine range of a thousand to ten thousand

21   dollars.

22             Now I will note that even if I agreed with the

23   government and found a loss enhancement based on the amount of

24   gain was appropriate, the guideline range would be 70 to 87

25   months and I would impose exactly the same sentence that I
```

IC69GERS

1    intend to impose.

2          Are there any guidelines arguments I have not

3    addressed?

4          Mr. Zhou.

5          MR. ZHOU:  Not from the government, your Honor.  Thank

6    you.

7          THE COURT:  Mr. Williams.

8          MR. WILLIAMS:  Not from the defense standpoint, your

9    Honor.

10          THE COURT:  OK.  Application note 21(a) of 2B1.1

11    provides that an upward departure may be warranted if the

12    offense level substantially understates the seriousness of the

13    offense.  The application note specifically mentions offenses

14    that cause or risked substantial nonmonetary harm.  That

15    describes the situation we have here.

16          Even if that departure were not applicable, an upward

17    variance might be appropriate.

18          In this case because of how the scheme worked it's not

19    readily apparent what the actual pecuniary loss to Fort

20    Schuyler was but it's clear that there was a risk of monetary

21    harm and there was substantial nonmonetary harm to Fort

22    Schuyler.

23          Are there any factual issues in dispute?

24          MR. ZHOU:  No, your Honor.

25          THE COURT:  I've sat through a trial so I don't think

IC69GERS

1   so but, Mr. Williams?

2            MR. WILLIAMS:  No, your Honor.

3            THE COURT:  Would the government like to be heard on

4   sentence.

5            MR. ZHOU:  Yes, your Honor.

6            Your Honor, I'll only speak for a few minutes and I

7   want to focus in particular on the Section 3553(a) factors that

8   compel the court to consider the seriousness of the offense as

9   well as the need to promote respect for the law.

10            Now, the government is fully aware that the court

11   understands the gravity and the seriousness of the offenses

12   that were covered at the January trial and at the June trial.

13   The court has made that very clear at the sentencing of

14   Mr. Gerardi's codefendants, Joseph Percoco, Peter Kelly, and

15   Louis Cimielli.

16            Now, unlike those three defendants, your Honor,

17   Mr. Gerardi was actually involved in both of the schemes that

18   were at issue in the two trials.  There was the egregious

19   bribery scream involving Mr. Percoco and there was the massive

20   bid rigging fraud that occurred with the Buffalo Billion

21   scheme.

22            Now, I think, your Honor, it's clear from the

23   defendant's submission that Mr. Gerardi doesn't recognize or

24   acknowledge the seriousness of those crimes.  And he also shows

25   no remorse at all for his involvement in them.

IC69GERS

1          Furthermore, I think it was striking that Mr. Gerardi

2     seems to accept no responsibility for his own actions and his

3     own participation in those crimes.

4          I was particularly -- I took particular note of

5     Mr. Gerardi's sentencing submission, page 35 and 36 of that

6     submission.  And in there Mr. Gerardi indicates that every

7     action was directed by Todd Howe and then he states that he was

8     fooled and tricked by Todd Howe who was a master manipulator.

9          Now, your Honor, that depiction of himself is

10    completely belied by the evidence that was presented in detail

11    in January and in June at the two trials.

12         Mr. Gerardi and his cofounder, Steven Aiello, at COR

13    they hired Mr. Howe and they engaged him, they paid him money,

14    in order to try to achieve a transformation of their company.

15    They wanted to take COR from being a construction developer

16    that built strip malls and Targets and they wanted to get

17    involved in public funding, they wanted to get involved in big

18    state projects, make themselves a big regional construction

19    player.  Now that goal was so important to them, your Honor,

20    that they were willing to break the law in order to achieve

21    that goal.

22         Mr. Gerardi was not manipulated by Mr. Howe.

23    Mr. Gerardi was Todd Howe's partner in crime.  They were

24    coconspirators and they committed these crimes together.

25         Now I find it amazing, your Honor, that Mr. Gerardi is

IC69GERS

 1    still claiming that he had no active role in these crimes given

 2    the evidence that was presented at the trials.

 3              Now, I'll just cite two quick examples, your Honor.

 4    From the Buffalo Billions side, your Honor might remember that

 5    there were e-mails discussing audited financials which were a

 6    requirement in the initial draft for the Syracuse RFP.  That

 7    was a requirement that COR did not meet and that they did not

 8    want to meet.  And so Mr. Gerardi put it in his handwritten

 9    notes on the draft.  He then followed up with an e-mail to

10    Mr. Howe emphasizing the importance of changing that

11    requirement.  And when Mr. Howe wrote him back saying, I talked

12    to the relevant people, Mr. Kaloyeros, and got that changed.

13    Mr. Gerardi wrote back, "thank you."  So, this is not

14    Mr. Gerardi being passive and being guided by Mr. Howe but

15    that's Mr. Gerardi actively trying to rig that RFP.

16              Now with respect to the Percoco bribery scheme, the

17    example comes from the labor peace agreement issue, your Honor.

18    Now Mr. Gerardi was the one who wrote the e-mail where he said

19    I think it's time to engage our labor consultant, using that

20    code language for Mr. Percoco, after it became clear that

21    Empire State Development was not going to accept the arguments

22    that COR was putting forth for why the LPA should not apply.

23              Furthermore, in November, as James Fayle, the regional

24    director out in Syracuse for ESD, was actually hounding

25    Mr. Gerardi to get on the phone to discuss the issue, to

IC69GERS

1   resolve the issue, Mr. Gerardi kept saying:  I can't talk to

2   you; I'm busy.  And in the meantime he was talking with

3   Mr. Aiello and Mr. Howe about making sure Joe Percoco took care

4   of that issue for them.

5           So, I think all of that evidence point -- and all of

6   the other evidence that was presented at trial, your Honor,

7   points to the fact that Mr. Gerardi was not a naive

8   businessman.  He was a coconspirator in these two massive

9   public corruption schemes.

10          I think it's also important to note that Mr. Gerardi

11  knew better, your Honor.  He was a lawyer.  He was a practicing

12  lawyer.  He was a member of the bar.  And he was an officer of

13  the court.  And yet he chose to engage in this criminal

14  activity.

15          Now, despite his background, despite his legal

16  education, his career in the law, it's clear that Mr. Gerardi

17  actually had very little respect for the law, which is another

18  factor under Section 3553(a).

19          I just want to touch on that briefly.

20          As I mentioned, your Honor, he participated in these

21  two schemes.  And then when he was approached by the FBI he

22  chose to sit for a proffer interview and lie.

23          Now he could have declined to speak.  He could have

24  invoked his rights and refused to meet with the government but

25  he didn't.  Instead, he came in, your Honor, and he tried to

IC69GERS

conceal his crimes and he tried to lie about them in order to
obstruct the investigation that the FBI was conducting.

    Now, I think here, again, Mr. Gerardi has shown that,
just like Mr. Ciminelli and Mr. Percoco, he has no contrition
and he accepts no responsibility for his involvement in these
criminal acts.

    Mr. Gerardi was the one who chose to come in and lie
to federal investigators.  And yet even today he continues to
try to cast some blame on the government for his own decision
to lie.

    Now, finally, your Honor, I want to very briefly
address the issue of deterrence and I think here the issue of
specific deterrence actually might play a role because under
the PSR it seems that Mr. Gerardi continues to play a role in
the COR Development Construction Company.

    Now, because of the trial and hopefully with the
evidence that was presented with people understanding what
Mr. Gerardi and COR -- and Mr. Aiello did here, hopefully they
won't have the opportunity to engage in future crimes but,
unlike Mr. Ciminelli whose business has gone out of business,
it appears that Mr. Gerardi is still working.

    And then, of course, your Honor we stress the
importance of general deterrence in this field as well.

    And all of those factors as well as what we put in our
submissions, your Honor, I think all of that supports the

IC69GERS

imposition of a substantial sentence of imprisonment.

    THE COURT:  Thank you, Mr. Zhou.

    Mr. Williams.

    MR. WILLIAMS:  Yes.

    Your Honor, let me start by saying this.  Both
Mr. Gerardi and Mr. Aiello have stepped back from their roles
at COR.

    THE COURT:  What does that mean?

    MR. WILLIAMS:  It means that they're no longer active
participants, OK.

    THE COURT:  They still hold their shares?

    MR. WILLIAMS:  They own their shares but they're not
involved, your Honor.  The business has been flipped on its
head for lack of a better term.  COR was a bedrock company in
Syracuse.  It has done a lot of good for the community and
employs a lot of people.  And even during this -- the whole
proceeding which I've been involved in for two years the
company has taken a hit.  And the partners at COR have done
everything they could to avoid layoffs, taking pay cuts
themselves, not taking distributions, in order to keep the
employees employed.  And there's a lot of them.  And there's a
lot of small business owners, a lot of small business entities
that relied on COR and do business with them.  So it's a little
bit -- it's not as cut and dry as the government is pointing
out.

IC69GERS

1        The other thing I will point to is this, your Honor.

2    You cannot ignore -- and this is not even a sympathy plea --

3    you cannot ignore a whole lifetime of good work and generosity.

4    Mr. Gerardi came from nothing.  He basically had to raise his

5    brothers and sisters.  He raised his family.  He had to help --

6    help his mother.  He started working when he was twelve years

7    old.  He worked his way through college and law school.  He did

8    everything on his own.  Nothing was given to him at all.

9        There's a lot of nice success stories like that.  This

10   is one of them.  And if you look at all of the letters you can

11   see that Joe Gerardi is a selfless and generous individual.

12   He's an individual who gives when it's not convenient to give.

13   An individual who gives, OK, when he's going through a hard

14   time.

15       For instance, on the day he was arrested in this very

16   matter, after he finished in court, he then went home and

17   did -- he's very involved in the boy scouts and did a whole, I

18   think, a hundred kids came over and he cooked food for them the

19   very day he got arrested.

20       And the letters all point this out.  You see this.  So

21   when I'm saying is this -- whatever the involvement, OK, here

22   is -- and, look, Mr. Gerardi is not making a statement because

23   I'm not letting him because obviously we're appealing.  I think

24   if he had an opportunity to talk he'd say a lot of things to

25   you about how he's sorry, how he's sorry he was here, how he's

IC69GERS

sorry for what he's done to his family, how he's sorry he took

up your time.  I think a lot of that would come out.  That's

not happening because of me.

          But, in any event, you cannot ignore a whole lifetime,

a body of work of generosity and selflessness.  And you

particularly cannot ignore it in the face of the fact that,

look, these guys were minding their own business, and I don't

want to relitigate the case, and then an individual they

respected greatly, Tom Young, introduced them to Todd Howe

because they were looking to expand the business.

          I guess if you look over the record and all the

e-mails like I did, in retrospect you want to go say:  Hey,

Joe, you can go say:  Hey, Steve, like why didn't you just get

rid of this guy?  I understand, the same comment your Honor

made in the middle of the first trial when you said:  I can't

for the life of me understand why your clients -- I get all

that.

          But what I'm saying is this is aberrational behavior.

The deterrence factor that Mr. Zhou speaks to, he and his wife,

their family's lives have been flipped upside down.  And

Mr. Gerardi is not pushing the responsibility off on the

government or anybody else but himself for what he's done, for

what has happened to his family, and for what's happened to the

company.  So there's -- in many ways he's acknowledging what

has happened and he continues to beat himself up about it.

IC69GERS

1      So, there's full acceptance of responsibility in that

2  regard.  And you've got to understand, your Honor, Todd Howe

3  was indeed a master manipulator.  He's so good -- I don't mean,

4  I'm not being sarcastic with the government, but he's so good

5  that not only did he misplead people in the executive chamber,

6  he was able to mislead the government, and they made a very

7  prudent choice in not using him in the second trial.

8      So it's conceivable that, you know what, Mr. Gerardi

9  followed behind Todd Howe.  And at some point, your Honor,

10  maybe he should have realized what -- maybe I should just pull

11  out, this is ridiculous.  But you know what, he didn't and

12  that's why he's here.  But there's a whole life body of work

13  that he did, a whole record of generosity that continues.

14      I can only speak to my own experience and I'm pretty

15  jaded.  So when I got involved in the case Joe and Steve and

16  all these people here, the entire COR family treated me like

17  family.  So being as jaded as I am, I thought, you know, yeah

18  they're just being nice because they need me -- need my help.

19  But I got to tell you it's much more than that.  That's who

20  they really are.  They are sincerely generous, giving people.

21  They treated me like family the whole time throughout the two

22  years.  And there's been a lot of ups and downs, as you're well

23  aware, and the graciousness has not changed one bit.  Even

24  today Joe is asking me how I'm doing.

25      So, I understand that your Honor is going to do what

IC69GERS

1    she has to do.  But I don't like the stark way that Mr. Zhou

2    portrayed Mr. Gerardi or COR.  It's a lot bigger than that.

3    Notwithstanding that we respect -- that I respect the jury's

4    verdict because that's why we have this system.

5              And that's it, your Honor.  Thank you very much.

6              THE COURT:  OK.  All right.  Mr. Gerardi, Mr. Williams

7    told me that you're not going to speak but I want to make sure

8    that I ask you.  Do you want to be heard?

9              THE DEFENDANT:  Your Honor, I appreciate the

10   opportunity to be heard but I have nothing to add to

11   Mr. Williams' comments.  Thank you.

12             THE COURT:  Mr. Gerardi, federal law requires me to

13   consider the nature and circumstances of the offense and the

14   history and characteristics of the defendant.

15             Mr. Gerardi is a 59-year-old lawyer who has been

16   married for over 30 years.  He has three children, one of whom

17   is in college, and twins who are in high school.

18             I think it's fair to say that Mr. Gerardi came from

19   humble beginnings.  His father was an alcoholic who left his

20   mother with six children when the defendant was not yet a

21   teenager.  The defendant put himself through school, ultimately

22   graduating with a law degree from Syracuse.

23             The defendant was a founding partner of COR and I

24   think it's fair to say has become wealthy and -- become a

25   wealthy and successful businessman in Syracuse.

 1          I've read all of the letters that the defense sent me
 2    on behalf of Mr. Gerardi.  To summarize the characteristics of
 3    Mr. Gerardi that this letter writers expressed, he is generous
 4    with his time, he is personally decent and compassionate.  He
 5    is quite active in boy scouts, having been a pack leader when
 6    his boys were cubs and a troop leader when they were boy
 7    scouts.  Both sons are eagle scouts.  Congratulations,
 8    Mr. Gerardi, to you and your wife.  That's an accomplishment.
 9    He's also a longtime volunteer with the Salvation Army, which
10    is a wonderful organization, and his employees love him.

11          Nevertheless, the letters leave me troubled about
12    Mr. Gerardi.  One of the letters from a legal assistant in
13    Fayetteville said the following about her interactions with
14    Mr. Gerardi when COR was planning and constructing the town
15    center in 2001.  She wrote, "Joe would call several times a
16    week to get directions from attorneys in the firm.  He wanted
17    to make sure that everything was done by the book.  Joe did not
18    want approvals, variance, etc. to be held up because of cutting
19    corners.  He wanted everything to be done correctly."

20          I have to wonder what happened to that Joe Gerardi.
21    What I saw during these two trials was a Joe Gerardi who was
22    willing to cheat on an RFP by secretly rigging it to meet COR's
23    characteristics.  I saw a Joe Gerardi who, upon being told by
24    an attorney that COR would need an LPA to obtain state grant
25    money to build a parking lot, did not engage with the person

making the call but instead called in political chits to get

what he wanted.  Regardless of whether that conduct was part of

an illegal bribe scheme, it was not the action of the squeaky

clean lawyer the legal assistant remembers from 2001.

          The fact that Mr. Gerardi was willing to cheat on the

RFP leads me, of course, to wonder:  How much of his and COR's

success is the result of him acting sneakily and dishonestly,

in absolute contravention of those boy scout values that he

inculpated in boys over all these years.  Maybe none.  But this

is precisely the problem with corruption, which is what I said

when I sentenced Mr. Ciminelli.  Once corrupt gets involved it

leaves everyone wondering whether anyone has achieved anything

based on the merits.

          Throughout the June trial the defense attorneys argued

strenuously that what happened there was not a crime.  They may

ultimately persuade the circuit or the Supreme Court that

they're right.  But what I know, what I believe Mr. Gerardi

knew at the time, is that what he did in connection with the

RFP was deeply wrong and it was contrary to what Mr. Gerardi's

friends believe are his core values.

          I saw proof that he knew what he did was wrong.  When

Mr. Gerardi thought the bid rigging was too obvious he wrote,

"too telegraphed," and told Todd Howe to change it.

          When Mr. Gerardi was given the opportunity to explain

what happened with the RFP process, he lied to the FBI.  If he

IC69GERS

1    didn't think he had done anything wrong, why lie?

2         In terms of the nature and circumstances of the

3    offense, there are few crimes more serious than public

4    corruption.  Mr. Gerardi was not himself a public official but,

5    in cahoots with Kaloyeros who was a public official, he

6    knowingly and intentionally defrauded Fort Schuyler.

7         The seriousness of the offense is not reflected by the

8    guidelines calculation which ignores the nonmonetary harm

9    caused by this crime.  Economic development projects like the

10   Film Center and the Soraa facility are important and valuable

11   to the state.  But the value is undermined if the process is

12   not fair to everyone involved.  That means it's actually fair

13   and it's perceived to be fair.  This process was neither.

14        When corruption creeps into economic development

15   projects it erodes citizens' faith their tax dollars are being

16   spent responsibly.  The more that faith is eroded, the less

17   likely public officials are to stick their necks out to support

18   controversial economic development projects that will bring

19   needed jobs into the state.

20        In short, the seriousness of Mr. Gerardi's crime is

21   that it caused nonpecuniary losses, the loss of the

22   taxpayer-supported university's ability to control its assets,

23   the loss of confidence by the citizens of New York in a billion

24   dollar economic development initiative, and the loss of an open

25   and transparent process in deciding how government funds will

IC69GERS

1   be spent.

2          Taking all of that into account federal law requires

3   me to impose a sentence that is reasonable and no greater than

4   necessary to accomplish the goals of sentencing.

5          I've considered all of the required sentencing

6   factors.  I will only discuss the factors that I believe are

7   most important as to this defendant.

8          I start with the seriousness of the offense.  As I've

9   indicated previously, there are few crimes that are more

10  serious than public corruption.

11         I've considered the need to promote respect for the

12  law.  Judging from the letters I received, many who know

13  Mr. Gerardi believe that he is an upright solid citizen who

14  always tries to set a good example for those around him.  But

15  as indicated, this trial revealed another side of him.  Putting

16  aside the fact that I have heard no remorse other than he's

17  sorry that his wife got dragged through this, I also have heard

18  no evidence that makes any sense to me of why he did this.

19         My gut tells me that the scheme originated with Todd

20  Howe.  Howe, who was paid by COR and CNSE, wanted to keep all

21  of his benefactors happy.  Now let me say while I think Howe

22  may have been the moving force, I reject the notion, because I

23  saw no evidence of it, that Mr. Gerardi did not know exactly

24  what he was doing.

25         But nevertheless, I think Howe's motive was to keep

IC69GERS

all of his benefactors happy.  Guaranteeing that COR won the

RFP would keep Mr. Gerardi and Mr. Aiello happy who were, after

all, paying him a lot of money.  If Gerardi and Aiello were

happy, the governor's office would be happy.  If the governor

was happy, Alain Kaloyeros would be happy.  If all those people

were happy, then Howe had done his job and the dollars would

keep rolling in.

          But if I'm right that this scheme originated with and

was nudged along by Howe, that would be precisely the time when

real integrity would come into play.  It's easy to act in an

upright way if you're not being tempted.  A person who really

respects the law would have told Howe and Kaloyeros:  Thanks,

but no thanks; COR will compete and win on the merits; it does

not need to cheat.

          I am not considering the counts on which Mr. Gerardi

was acquitted during the first trial.  Whether Mr. Gerardi was

part of an illegal bribery scheme is not relevant to my

sentence.  But I can't close my eyes to the facts that came out

during that trial, especially the uncontroverted evidence that

I alluded to before about how Mr. Gerardi dealt with the LPA

issue.

          Whether this conduct was legal or not legal,

Mr. Gerardi showed no respect for the process.  He was above

it.  He had his guy who had influence.  Getting what he wanted,

even if it involved getting Percoco to wield influence was more

1   important than working with the public servants who were

2   charged with administering the project.

3          For months Mr. Gerardi left calls from those public

4   servants unanswered while he leaned on his man from the

5   governor's office to make the problem go away.  And when he got

6   what he wanted, he laughed and he demeaned those public

7   servants who had just been trying to do their job.

8          I've considered the need to impose just punishment

9   while avoiding unwarranted disparities.  The issue with this

10  factor is it's hard to draw good parallels between different

11  cases handled by different judges.  In this case I see

12  Mr. Gerardi as roughly equal in culpability to Aiello and

13  Cimielli and less culpable than Kaloyeros or Percoco.  I would

14  note, however, that Cimielli's health was a significant factor

15  in his sentence.

16         I view Mr. Kelly in a different category because he

17  pled guilty, accepted responsibility for his crime, and

18  expressed remorse.

19         I've considered the need to deter criminal conduct.

20  There are two aspects of deterrence, specific and general.  I

21  disagree with Mr. Zhou that specific deterrence is a major

22  factor here.  I agree with you, Mr. Williams, that I think

23  Mr. Gerardi has for the most part lived a law-abiding life.

24  This is a sad day.  There is no way around it.

25         But general deterrence, that is, how do we deter

IC69GERS

1    people generally from committing crimes, in connection with

2    this sentence is a huge factor.  As I've said and will say for

3    all of the sentencings in this case, I hope these sentences

4    will be heard around the state.  This prosecution, which has

5    been devastating to the Gerardies and to Joe Gerardi himself,

6    should serve as a warning to others who interact with the

7    government everywhere.  When you're competing for state

8    projects, including projects run by entities like Fort

9    Schuyler, you are vying for state money.  That means you must

10   be purer than pure because the money you are trying to get

11   comes from hardworking New Yorkers.  If you can't live with

12   that, then stick to private sector work.  Because if you remain

13   at the public trough and you engage in corruption, you engage

14   in corrupt means to get to that public money, even if you did a

15   good job for the public, the court will show you no mercy no

16   matter how many nice letters I receive.

17          Finally, I've considered the sentencing guidelines.

18   As indicated previously, the guideline I find applies calls for

19   a sentence of four to ten months.  I believe that is not

20   reasonable and it is less than necessary to achieve the goals

21   of sentencing.

22          Taking all of this into account, and recognizing that

23   you have generally lived a good life filled with good works, I

24   sentence you to the custody of the Attorney General for a

25   period of 30 months on Counts One, Two, and Sixteen concurrent,

1    to be followed by a period of supervised release of two years

2    on each count concurrent.

3            I've also considered all of the factors regarding

4    imposition of a fine.  Regardless of whether Fort Schuyler

5    experienced a calculable pecuniary loss, cheating on the RFP

6    resulted in financial benefit to COR which in turn benefited

7    Gerardi.  So, a fine is appropriate.

8            In setting the amount of the fine, I've considered the

9    guideline range, which is laughably low given this defendant's

10   conduct, as well as his financial resources, the fact that a

11   fine will not impose an undue financial burden on any one of

12   his dependents, the fact that no restitution was sought for the

13   expected cost to the government of imprisonment.

14           Taking all of those factors into account, I am

15   ordering Mr. Gerardi to pay a fine of $250,000 on Counts One

16   and Two to run concurrent to each other and a fine of $250,000

17   on Count Sixteen consecutive for a total fine of $500,000.  The

18   fine must be paid within 30 days of today.

19           I note that there's a dispute over forfeiture.  And

20   we'll discuss that in a moment.

21           I would note, though that I will impose the same fine

22   regardless of whether forfeiture is or is not ordered and

23   regardless of the amount of forfeiture that might be ordered.

24           There are mandatory conditions of supervised release.

25           You must not commit another crime.

IC69GERS

1          You cannot illegally possess a controlled substance.

2          You cannot possess a firearm or other destructive

3    device.

4          I'm going to waive mandatory drug testing because I

5    find the risk of drug abuse is low.

6          The defendant must cooperate in the collection of DNA.

7          In addition to the standard conditions of supervision,

8    I am imposing the following special conditions.

9          The defendant must provide the probation office with

10   access to any requested financial information.

11         The defendant must not incur new credit charges or

12   open additional lines of credit without the approval of the

13   probation officer unless he's in compliance with the payment

14   schedule.

15         The defendant must report to the nearest probation

16   office within 72 hours of release.

17         And he'll be supervised by the district of residence.

18         I must impose a $300 special assessment.

19         I've got a letter from the defendant regarding bail

20   pending appeal.  Mr. Zhou, would you like to be heard on that?

21         MR. ZHOU:  Yes, your Honor.

22         The government would like to request a week, your

23   Honor, to put in a responsive writing.

24         THE COURT:  That's fine.  I'll actually give you a

25   little over a week.  Your response is due December 14.

IC69GERS

1                Any reply, Mr. Williams, is due December 20.

2                MR. WILLIAMS:  Thank you, your Honor.

3                Your Honor, I think there's one other matter.  Can I

4      request, make a special request of the court to consider

5      recommending a facility for Mr. Gerardi?

6                THE COURT:  I'll get to that in just a second.

7                MR. WILLIAMS:  Sure.

8                THE COURT:  I'm going to allow the defendant to

9      surrender himself to the designated facility.  If the defendant

10     does not persuade me that he's entitled to bail pending appeal,

11     he's must surrender to the designated institution by noon on

12     March 1, 2019.  If no facility has been designated, he must

13     surrender to the United States Marshal in the Southern District

14     of New York by that time.

15                If I grant bail pending appeal and if the Second

16     Circuit affirms his conviction, then he'll need to surrender 60

17     days following the issuance of the mandate.

18                What's your request for designation, Mr. Williams?

19                MR. WILLIAMS:  I believe it's the Canaan Facility at

20     Wal-Mart, Pennsylvania.

21                THE COURT:  Canaan Facility?

22                MR. WILLIAMS:  Yes.  It's C-A-N-A-A-N, I believe.

23                THE COURT:  At where?

24                MR. WILLIAMS:  It's in Wal-Mart, PA.

25                THE COURT:  Wal-Mart?

IC69GERS

1           MR. WILLIAMS:  Yeah, Wal-Mart, Pennsylvania.

2           THE COURT:  Like the store?

3           MR. WILLIAMS:  Yes, your Honor.

4           THE COURT:  OK.  Mr. Gerardi, I'm happy to make that

5    request.  Understand that all I can do is request.  It's up to

6    the Bureau of Prisons where they're going to put you.

7           I received a letter from the government regarding

8    forfeiture and I received an objection to my entering a general

9    order of forfeiture with the amount to be decided later.

10          Mr. Williams, would you like to be heard further on

11   that?

12          MR. WILLIAMS:  Other than the letter, your Honor?

13          THE COURT:  Yes.

14          MR. WILLIAMS:  No.

15          THE COURT:  All right.  Your objection is overruled.

16   I'm going to enter a general order.  The parties are ordered to

17   attempt to work out the amount of forfeiture.  If you cannot,

18   the government's brief both on the standard that should be

19   applied as well as the appropriate amount of forfeiture is due

20   January 11, 2019.  The defense response is due January 25,

21   2019.  The government's reply is due February 1, 2019.

22          Mr. Gerardi, you have the right to appeal your

23   conviction and sentence.  If you're unable to pay the cost of

24   an appeal you may apply for leave to appeal in forma pauperis.

25   The notice of appeal must be filed within 14 days of the

IC69GERS

1    judgment of conviction.

2             Anything further from the government?

3             MR. ZHOU:  No, your Honor.  Thank you.

4             THE COURT:  Anything further from the defense?

5             MR. WILLIAMS:  No, your Honor.  Thank you.

6             THE COURT:  OK.  There are open counts.

7             MR. ZHOU:  Yes, your Honor.  The government does move

8    to dismiss those open counts.

9             THE COURT:  Anything open and underlying is dismissed.

10            Thank you all.

11            (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25