

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

<i>The Silvio J. Mollo Building<br>One Saint Andrew's Plaza<br>New York, New York 10007</i>

December 14, 2018

**BY ECF**

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Gerardi & Aiello*, S2 16 Cr. 776 (VEC)

Dear Judge Caproni:

    The Government writes in opposition to the applications of defendants Joseph Gerardi and Steven Aiello for bail pending appeal.  The Government respectfully submits that: (1) the Court should deny Gerardi's motion, principally advanced in his letter dated December 4, 2018 (Dkt. No. 941) because Gerardi has not raised a substantial question with respect to his conviction for making false statements to the FBI, for which he has been sentenced to 30 months' imprisonment; and (2) deny Aiello's motion for bail pending appeal, principally raised orally at his sentencing proceeding, for substantially the same reasons set forth in the Government's opposition to Joseph Percoco's motion for bail pending appeal.

    **A.  Gerardi's Motion Should Be Denied**

    Where, as here, the defendant does not present a flight risk, the court may grant bail pending appeal only upon a showing that the appeal will present a "substantial question of law or fact likely to result" in reversal or an order for a new trial.  18 U.S.C. § 3143(b).  A substantial question "is one of more substance than would be necessary to a finding that it was not frivolous.  It is a 'close' question or one that very well could be decided the other way." *United States v. Randell*, 761 F.2d 122, 125-26 (2d Cir. 1985) (internal quotation marks omitted).  The burden rests on the defendant to show that his appeal raises a substantial question of law or fact likely to result in reversal or a new trial on all counts.  Without such a showing, the defendant is not entitled to bail.  *Id.* at 125.

    Gerardi offers four arguments in support of bail pending appeal, but none of them has merit.[1]  *First*, Gerardi retreads his claim of supposed "prosecutorial misconduct" in connection

---

[1] In his letter, which was filed in advance of his sentencing hearing, Gerardi also argued that his sentence on the false statement count would be shorter than the appeals process.  (Gerardi Ltr. 3.) That argument should be rejected given that Gerardi has now been sentenced to 30 months of imprisonment on his false statement conviction.  (*See* Dkt. No. 945.)

with his proffer interview, which was properly rejected by this Court. In his pretrial motions, Gerardi contended that the false statement charges should be dismissed because the Government purportedly misrepresented his status as a "subject" of investigation prior to his proffer interview. The Court denied that motion because "the fact that the Defendants believed they were subjects, rather than targets, of the investigation" would not "permit them to lie at their proffer session." (Dkt. No. 390 at 47.) There is no question, much less a substantial one, about the correctness of that ruling. Indeed, the defendant cites no new authority to suggest the Court's ruling was in error, nor is the Government aware of any. Federal law makes it a crime for individuals to make false statements to federal officers, 18 U.S.C. § 1001(a), and that proscription applies to everyone interviewed by the Government, regardless of whether the Government believes them to be targets, subjects, or simply witnesses.

*Second*, and related, Gerardi argues that the Government made improper comments in its summation about the many false statements that he made during his proffer interview. Before the summations, Gerardi urged the Court to bar the Government from arguing about the falsity of any statements other than the lie about tailoring the Syracuse RFP that was specifically charged in the Indictment. (Gerardi (Dkt. No. 778); Gov. Opp. (Dkt. No. 780).) Gerardi argued that the jury might mistakenly convict him based on a lie other than the one identified in the Indictment. The Court denied that request on the ground that the jury instructions would be clear about the specific false statement that would have to be found beyond a reasonable doubt in order to return a guilty verdict on that count. (Trial Tr. 2424.) Indeed, the Court's final charge clearly explained that the false statement count "alleges that Mr. Gerardi falsely denied his involvement in a scheme to tailor the Syracuse RFP for COR's benefit" and that the first element required the jury to find beyond a reasonable doubt that "on or about June 21, 2016, Mr. Gerardi made a statement to a representative of the United States government in which he denied his involvement in a scheme to tailor the Syracuse RFP for COR's benefit." (Trial Tr. 2894.) Because the jury is presumed to follow the Court's instructions, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), and those instructions, as noted, were plainly correct, there is no question that the jury found that Gerardi made the specific false statement about tailoring the Syracuse RFP that was charged in the Indictment.[2]

---

[2] Gerardi's argument that it was improper for the Government to point out the many lies from his proffer session overlooks the fact that those lies were relevant and persuasive evidence of both his intent to make false statements and his consciousness of guilt as to the wire fraud offenses. It was entirely appropriate for the Government to reference those lies and argue that they were circumstantial proof of Gerardi's knowledge of his own wrongdoing. (*See, e.g.*, Trial Tr. 2464 (Government summation: "Why would people lie, why do they hide things, why do they cover things up? Because they know they did something wrong. And in this case, the lies, the concealment, the destruction of evidence by these defendants are proof positive that they knew what they were doing was wrong, and that they are guilty.").) *See also United States v. Anderson*, 747 F.3d 51, 60 (2d Cir. 2014) ("[A]cts that exhibit a consciousness of guilt, such as false exculpatory statements, may also tend to prove knowledge and intent of a conspiracy's purpose, although false exculpatory statements alone do not suffice to establish guilty knowledge." (internal quotation marks and citation omitted)). Gerardi's belief that the Government committed "misconduct" by making these well-established arguments about intent is flat-out wrong.

*Third*, Gerardi argues that his appeal raises a "substantial issue of fact" because the "only evidence regarding Mr. Gerardi's denial of tailoring was the following testimony from FBI Agent Kathleen Garver: '[Mr. Gerardi] stated that he did not ask for the RFP to be tailored to COR, nor did he feel as though it was tailored to COR.' Tr. 1700." (Gerardi Ltr. 3.) Gerardi asserts that those particular statements were not false because there was no evidence he "asked" for the RFP to be tailored. (*Id.*) But Gerardi has apparently forgotten some of the key evidence presented during the trial. For example, when Howe sent Gerardi and Aiello the draft Syracuse RFP, he expressly noted that Fort Schuyler employees were "fine tuning now but expect to release to public this week. What do you think? Keep confidential, please." (GX 606.) Gerardi marked up the draft by hand, sent it back to Howe and Aiello, and asked for a "brief chat" to discuss his comments. (*Id.*) In his mark-up, Gerardi wrote, among other things, that the requirement for audited financial statements should be changed because COR Development did not have them. (*Id.*) Gerardi then wrote a follow-up email to Howe, and, after Howe confirmed the change to that requirement, Gerardi thanked him. (GX 607, 646.) In view of this evidence, there is no substantial question of fact about Gerardi's active involvement in tailoring the Syracuse RFP.

*Fourth*, Gerardi argues that, if his wire fraud and conspiracy convictions are ultimately reversed on appeal, the Second Circuit will reverse his false statement conviction due to the prejudicial spillover effects of evidence related to the Buffalo RFP and the deletion of emails by Alain Kaloyeros and Louis Ciminelli. The argument is doubly wrong. As an initial matter, the Second Circuit has held that a prejudicial spillover argument, on its own, is not sufficient to meet the standard for bail pending appeal. *See Randell*, 761 F.2d at 125-26 (denying bail pending appeal where the defendant, convicted of fraud and tax crimes, argued that there were substantial questions related to his fraud convictions, but his "only claim with respect to the tax counts is that the jury could have been affected by the 'spillover' from the court's other alleged errors. We do not believe that this 'spillover' argument is sufficient to satisfy the burden of persuasion that Fed.R.App.P. 9(c), as amended by § 210 of the Bail Reform Act of 1984, places upon" the defendant).

Next, even assuming *arguendo* that Gerardi were to prevail on appeal on the wire fraud convictions, it is doubtful that the Second Circuit would vacate the false statement conviction. The Second Circuit "look[s] to the totality of the circumstances to assess prejudicial spillover of evidence from dismissed counts. Specifically [the Second Circuit] examine[s]: 1) whether the evidence on the vacated counts was inflammatory and tended to incite or arouse the jury to convict the defendant on the remaining counts; 2) whether the evidence on the vacated counts was similar to or distinct from that required to prove the remaining counts; and 3) the strength of the government's case on the remaining counts." *United States v. Naiman*, 211 F.3d 40, 50 (2d Cir. 2000).

Each of those factors would support affirming the false statement conviction. With respect to the first prong, most of the evidence of the wire fraud overlapped with the evidence that proved Gerardi lied when he said that he did not tailor the Syracuse RFP. As a consequence, the wire fraud evidence was not "inflammatory" and did not "incite or arouse the jury to convict" Gerardi of making false statements. *Id.* Gerardi claims that the evidence of email deletion by Kaloyeros and Ciminelli was inflammatory and prejudicial to him, but the Court carefully instructed the jury to consider each defendant and each count individually, (*see* Trial Tr. 2880 ("You must consider

each count and each defendant separately. . . .  Your verdict as to each defendant must be determined separately with respect to him, solely on the evidence or lack of evidence presented against him, without regard to the guilt or innocence of anyone else.")), and the evidence was clear that Gerardi did not delete any emails.  As for the second prong, "where the vacated and remaining counts emanate from similar facts, and the evidence introduced would have been admissible as to both, it is difficult for a defendant to make a showing of prejudicial spillover."  *Naiman*, 211 F.3d at 50.  Contrary to Gerardi's assertions, much of the evidence of the bid-rigging scheme between Gerardi, Aiello, Kaloyeros, Ciminelli, and Howe—including the explicit emails in which the schemers discussed qualifications and exchanged ideas—would be admissible to prove that Gerardi lied when he said that he did not tailor the Syracuse RFP.  Finally, as to the third prong, the Government had strong proof that Gerardi lied, particularly given the evidence of Gerardi's statements at the proffer session and their incongruity with the plain meaning of his emails.  (*Compare* GX 606 (handwritten remark: "Too telegraphed??") *with* Trial Tr. 1694-95 (Gerardi "stated that he was concerned that it wouldn't be broad enough for other developing companies to be able to apply for the RFP.").)  In sum, Gerardi's spillover argument is not likely to lead to reversal, and thus does not constitute a substantial question under Section 3143(b).

### B. Aiello's Motion Should Be Denied

At the close of Aiello's sentencing, his counsel argued that Aiello too should be allowed to remain on bail pending resolution of his anticipated appeal.  As the Court is aware, Aiello was convicted at trial of (1) one count of conspiracy to commit honest services wire fraud in violation of Title 18, United States Code, Section 1349, in relation to the Percoco bribery scheme, and (2) one count of conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349, and one count of wire fraud, in violation of Title 18, United States Code, Section 1343, arising from Aiello's participation in the RFP bid-rigging scheme.  At Aiello's sentencing, he claimed that there was a substantial question as to whether the "as opportunities arise" theory of bribery was still valid in light of *McDonnell*, and whether, under *McDonnell*, "a private citizen can . . . be involved in an honest services fraud conspiracy that's based on public corruption."  (Sent. Tr. 38-40.)  Specifically, Aiello claimed that these issues constitute substantial questions under *Randell*, as the Second Circuit has yet to definitively rule on either issue post-*McDonnell*.

But the fact that the Second Circuit has not ruled on these issues post-*McDonnell* does not suggest that they are "novel" issues, it suggests the opposite.  As the Government indicated at Aiello's sentencing, the issues that Aiello claims are substantial are the same ones raised by Aiello's co-defendant, Joseph Percoco, in his motion for bail pending appeal dated October 11, 2018.  (*See* Dkt. No. 884.)  The Government responded to those arguments in its brief filed on November 2, 2018 (the "November 2nd brief"), and incorporates that response into this letter.  (*See* Dkt. No. 897.)  As the Government explained in its November 2nd brief, *McDonnell* had nothing to do with the validity of the "as opportunities arise" theory of bribery, or whether a private citizen can commit public honest services fraud.  *McDonnell* concerns only the proper interpretation of the phrase "official act" in Title 18, United States Code, Section 201(a)(3).  Indeed, this Court has recognized as much.  (*See* Opinion dated Dec. 11, 2017 (Dkt. No. 390 at 8-9).)  Accordingly, the fact that the Second Circuit has not ruled on *McDonnell*'s impact on issues not before the Supreme Court in *McDonnell*, is unremarkable and does not create a substantial issue for purposes of bail.

For the reasons set forth above, and the reasons outlined in the Government's November 2nd brief, Aiello's motion for bail pending appeal should be denied.

\* \* \*

Based on the foregoing, the Court should deny Gerardi's motion for bail pending appeal because his appeal will not raise a substantial question about his false statement conviction. Furthermore, the Court should deny Aiello's motion for bail pending appeal for the reasons set forth in the Government's opposition to Percoco's motion for bail pending appeal.

> Respectfully submitted,
>
> GEOFFREY S. BERMAN
> United States Attorney
>
> By: /s/
>   Janis Echenberg / Robert Boone
>   David Zhou / Matthew Podolsky
>   Assistant United States Attorneys
>   (212) 637-2597/2208/2438/1947

cc: Counsel of record (via ECF)